IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SCOTT TURNER,

      Plaintiff,

    v.

UNIT MANAGER MOORE, et al.,

      Defendants.

CIVIL ACTION NO.: 5:24-cv-77

**O R D E R**

Defendants Moore, Stone, Sizemore, White, and Grievance Coordinator ("Defendants") filed a Motion to Dismiss.  Doc. 26.  Plaintiff filed a Response.  Doc. 30.  For the following reasons, I **GRANT** Defendants' Motion to Dismiss, **DISMISS** Plaintiff's Complaint as time-barred, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.[1]  I further **DENY** Plaintiff leave to appeal *in forma pauperis*.

**BACKGROUND**

Plaintiff filed this Complaint, asserting an Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983.  Doc. 1.  Plaintiff was incarcerated at Coffee Correctional Facility ("CCF") at the time the events giving rise to the Complaint occurred.  Plaintiff alleges that he was hospitalized for cellulitis and, upon returning to CCF, he did not receive prescribed medication.  Id. at 13.  This "allowed cellulitis to return even worse causing serious pain . . . ."

---

[1]    Defendants Carelock, Hyers, and Medical Facilitator have not yet appeared in this case. Ultimately, Plaintiff's claims against these Defendants are identical to his claims against Defendants Moore, Stone, Sizemore, White, and Harrell.  Plaintiff's claims against all Defendants fail for the same reasons.  See Courboin v. Scott, 596 F. App'x 729, 735 (11th Cir. 2014) (holding that dismissal of non-moving defendants was not unfair because the non-moving defendants were similarly situated to the moving defendants and the opposing party could respond to the issues the moving defendants raised).

Id.  Plaintiff alleges that officers placed him "in the hole" and "laughed at [his] cries for help and ignored [him]." Id.  A nurse eventually saw him and sent him to the medical department. Id. Plaintiff also alleges that he was deprived of various items of personal property. Id. at 13–14. Finally, Plaintiff alleges that he has not received a functioning c-pap machine or surgery for rotator cuff problems "even after request and grievances." Id. at 14.

Defendants filed a Motion to Dismiss, arguing that Plaintiff's claims are time-barred and that he failed to exhaust administrative remedies. Doc. 26.  Plaintiff did not timely respond to the Motion, and the Court issued an Order that Plaintiff show cause why his case should not be dismissed. Doc. 28.  Plaintiff responded to the Order, stating that he "did not receive your order until October 17, 2025 so I could not respond to [the] motion." Doc. 30 at 1.  Plaintiff added: "This is a just grievance that caused me perman[e]nt injury and should not be excused because of their intentional neglect towards my health." Id.  Plaintiff does not address the substance of the Motion to Dismiss in any way, despite having ample opportunity to do so.

## DISCUSSION

### I.    Time-Barred Claims

Plaintiff asserts causes of action for violation of civil rights under 42 U.S.C. § 1983. Section 1983 claims "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011).  Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33.  Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).  Generally, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to

a person with a reasonably prudent regard for his rights." Id. "The statute of limitations for claims brought under § 1983 begins to run when facts supporting the cause of action are or should be reasonably apparent to the claimant." Johnson v. County of Paulding, 780 F. App'x 796, 798 (11th Cir. 2019) (citing Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003)).

Many of Plaintiff's allegations arise from events that occurred in May 2020. Doc. 1 at 5. He alleges that he was denied medication on May 4, 2020, and that he was "placed in the hole" at some point between then and May 12, 2020. Id. at 5, 13. Plaintiff filed the Complaint on October 11, 2024, well over two years after the limitations period had run. Thus, absent any basis for tolling, Plaintiff's claims related to events that occurred in May 2020 are barred by the statute of limitations.

There is no apparent basis for tolling Plaintiff's claims. See Bridgewater v. DeKalb County, No. 1:10-cv-1082, 2010 WL 11507266, at *6–8 (N.D. Ga. July 12, 2010) (providing a discussion on the tolling provisions available under Georgia and federal law). Georgia law provides the limitations period may be tolled in the following circumstances: (1) the party is legally incompetent, O.C.G.A. § 9-3-90; (2) the person becomes legally incompetent after the right accrues, O.C.G.A. § 9-3-91; (3) an estate becomes unrepresented, O.C.G.A. §§ 9-3-92, 9-3-93; (4) the defendant is absent from the State, O.C.G.A. § 9-3-94; (5) one party in a joint action is legally incompetent, O.C.G.A. § 9-3-95; (6) there is fraud by the defendant, O.C.G.A. 9-3-36; (7) there are counterclaims and cross claims, O.C.G.A. § 9-3-37; (8) the party is bringing a medical malpractice claim, O.C.G.A. § 9-3-97.1; (9) a tort arises from a crime, O.C.G.A. § 9-3-99; and (10) there is a non-statutory basis for equitable tolling. Bridgewater, 2010 WL

3

11507266, at *6 (citing State v. Private Truck Council, Inc., 371 S.E.2d 378, 380–81 (Ga. 1988)).

Additionally, there is no basis for non-statutory equitable tolling in this case. "Georgia's non-statutory doctrine of equitable tolling is extremely narrow," and the only discussion of non-statutory equitable tolling in the Georgia courts is in the context of a class action lawsuit. Id. at *7 (citing Hicks v. City of Savannah, No. 4:08-cv-6, 2008 WL 2677128, at *2 (S.D. Ga. July 8, 2008), and Private Truck Council of Am., Inc., 371 S.E.2d at 380–81)). Because Plaintiff brings § 1983 claims and not a class action, the claims are not tolled under Georgia's non-statutory equitable tolling. See id. (holding same). Accordingly, I **DISMISS** the claims in Plaintiff's Complaint arising from the May 2020 incident.

## II.     Timely But Unexhausted Claims

While the majority of Plaintiff's claims are barred, he also alleges that he was deprived of a functioning c-pap machine "a couple months" before he filed the Complaint. Doc. 1 at 14. Defendants argue that, in addition to being time-barred, all of Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies. Doc. 26 at 7. Plaintiff does not respond to these arguments.

### A.     Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**B.      Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 634 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu,

759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. 460, 468 (2025).

### C.     Applying Turner

Defendants argue that the Court should dismiss the Complaint because Plaintiff failed to "fully grieve" his concerns about access to a sleep apnea machine. Doc. 26 at 10.

#### 1.     The Georgia Department of Corrections' ("GDC") administrative remedies.

CCF, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 26-1 at 6. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Under SOP 227.02, the grievance procedure applies to "any condition, policy, procedure, or action or lack thereof that personally affects the Offender," excluding certain designated "[n]on-Grievable Issues." Id. at 9.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 13. Under Step 1, the inmate must submit a completed grievance form within 10 calendar days of "the date the Offender knew, or should have known, of the facts giving rise to the grievance." Id. Then, the inmate may appeal the decision to the GDC Central

Office under two circumstances: (1) after the inmate receives the Warden's response to the grievance; or (2) after the time allotted for the Warden to decide has expired. Id. at 19. The SOP provides a 40-day period for the Warden's response to be given to the inmate, with the possibility provided for a 10-day extension. Id. at 16. An appeal must be filed within seven days of an inmate receiving the Warden's response. Id. at 19. If the Commissioner determines a grievance should have been accepted and processed, the grievance is returned for investigation, and the Warden/Superintendent has 15 calendar days from receipt to deliver the decision to the inmate. Id. at 20.

### 2.    *Plaintiff's claim fails under Turner step one.*

Defendants argue that Plaintiff did not properly exhaust his available administrative remedies because he did not fully grieve the complained-of incidents. Doc. 26 at 10. Plaintiff filed one grievance, Grievance Number 308140, on May 15, 2020. Prison administrators denied the grievance, and Plaintiff appealed. Plaintiff's appeal was denied on July 28, 2020. Doc. 26-1 at 36–37. There is no indication from the record that this grievance involved complaints about sleep apnea. Id. Plaintiff filed another grievance, Grievance Number 341894, on July 7, 2022. The grievance was denied on August 19, 2022. Plaintiff did not appeal the denial. Id. at 38–39. The record does not include any other grievances filed after July 7, 2022. Plaintiff does not dispute these facts and makes no argument that he properly grieved any issues regarding a c-pap machine.

The parties' factual allegations do not conflict. Defendants argue that Plaintiff failed to exhaust by not appealing Grievance Number 341894. Doc. 26. Plaintiff alleges no facts to contradict this and makes no argument in response.

Plaintiff failed to follow CCF's procedures prior to filing a grievance. The SOP clearly requires inmates to file a central office appeal if their grievances are denied. Grievance Number 308140 did not address a c-pap machine. Plaintiff did not appeal Grievance Number 341894 and, even if he had, any suit based solely on that grievance would be untimely. Critically, Plaintiff did not file any grievance whatsoever concerning his timely allegations that he was denied a c-pap machine "a couple months" before filing suit. Doc. 1 at 14. "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Johnson, 418 F.3d at 1157–58 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002)). Allowing an inmate-plaintiff to disregard that process "would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem." Id. (quoting Pozo, 286 F.3d at 1023–24).

Because the undisputed facts show that Plaintiff did not allow the process outlined in the SOP to conclude before he filed suit, he did not exhaust his administrative remedies. And there is no indication whatsoever that the administrative remedies process was unavailable to Plaintiff. Therefore, I **DISMISS** Plaintiff's claims against Defendants.

## III.    Leave to Appeal *in Forma Pauperis*

I also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context

11

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, I **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' Motion to Dismiss, **DISMISS** Plaintiff's Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **DENY** Plaintiff leave to appeal *in forma pauperis*.

**SO ORDERED**, this 7th day of July, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12